**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000679**
**30-NOV-2018**
**01:11 PM**

NOS. CAAP-16-0000679 AND CAAP-16-0000782

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-16-0000679**
BENJAMIN PAUL KEKONA and TAMAE M. KEKONA,
Plaintiffs/Counterclaim-Defendants/Appellees,
v.
PAZ F. ABASTILLAS, also known as PAZ A. RICHTER,
ROBERT A. SMITH, personally,
Defendants/Counterclaim-Plaintiffs/Appellees,
and
ROBERT A. SMITH, Attorney at Law, A Law Corporation,
STANDARD MANAGEMENT, INC., U.S. BANCORP MORTGAGE
COMPANY, an Oregon Company, WESTERN SURETY
COMPANY, Sued herein as Doe Entity 1,
Defendants-Appellees,
and
MICHAEL BORNEMANN, M.D., Defendant-Appellant,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS
1-10; DOE ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 93-3974-10)

**CAAP-16-0000782**
BENJAMIN PAUL KEKONA and TAMAE M. KEKONA,
Plaintiffs/Counterclaim-Defendants/Appellees,
v.
PAZ F. ABASTILLAS, also known as PAZ A. RICHTER,
ROBERT A. SMITH, personally,
Defendants/Counterclaim-Plaintiffs/Appellants,
and
ROBERT A. SMITH, Attorney at Law, A Law Corporation,
STANDARD MANAGEMENT, INC., MICHAEL BORNEMANN, M.D.,
U.S. BANCORP MORTGAGE COMPANY, an Oregon Company,

WESTERN SURETY COMPANY, Sued herein as Doe
Entity 1, Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS
1-10; DOE ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 93-3974-10)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Reifurth, JJ.)

The litigation between the parties in these consolidated appeals has an extensive history. This lawsuit was brought in 1993 by Plaintiffs-Appellees Benjamin Paul Kekona and Tamae M. Kekona (collectively **the Kekonas**)[1] against Defendants-Appellants Paz F. Abastillas (**Abastillas**), Robert A. Smith (**Smith**) and Michael Bornemann (**Bornemann**), among others. The Kekonas' claims in this case relate to conduct by the defendants which prevented the Kekonas from obtaining recovery awarded to them in a prior lawsuit.

In the prior lawsuit, Standard Management, Inc. (**SMI**), a company run by Abastillas, filed suit against the Kekonas based on a partnership and business dispute related to operating a tram at Hanauma Bay (**Hanauma Bay lawsuit**). See Standard Mgmt., Inc. v. Kekona, 99 Hawai'i 125, 53 P.3d 264 (2001). In that suit, the Kekonas counterclaimed and also brought third-party claims against Abastillas and Smith. In May of 1993, a jury verdict was entered in favor of the Kekonas and against SMI, Abastillas and Smith, which included awards of specified damages. Within days of the Hanauma Bay lawsuit verdict: Abastillas transferred to Bornemann her interest in an apartment unit located on Nu'uanu Avenue (**Nu'uanu property**); and Abastillas and Smith transferred to Bornemann their primary residence, located in Kāne'ohe (**Kāne'ohe property**).

---

[1] Plaintiff Benjamin Paul Kekona passed away during the course of this lawsuit. The case has continued with Plaintiff Tamae M. Kekona, individually and as personal representative for the Estate of Benjamin Paul Kekona.

In October of 1993, the Kekonas initiated the instant lawsuit alleging causes of action for: Fraudulent Conveyances to Avoid Rightful Creditors (Count One); Hawaii RICO violations (Count Two); Conspiracy to Commit Fraudulent Conveyances (Count Three); and Illegal Notary (Count Four). This lawsuit alone has generated three separate trials and two prior sets of appeals. See Kekona v. Abastillas, No. 24051, 2006 WL 1562086 (Hawai'i App. Jun. 8, 2006) (Mem. Op.) ((**Kekona I**), vacated in part by Kekona v. Abastillas, 113 Hawai'i 174, 150 P.3d 823 (2006) (**Kekona II**); Kekona v. Bornemann, 130 Hawai'i 58, 305 P.3d 474 (App. 2013) (**Kekona III**), vacated in part by Kekona v. Bornemann, 135 Hawai'i 254, 349 P.3d 361 (2015) (**Kekona IV**).

The current appeals by Bornemann in CAAP-16-0000679 and by Abastillas and Smith in CAAP-16-0000782, respectively, seek to contest the "Consolidated Third Amended Revised Final Judgment" filed on September 19, 2016 (**9/19/16 Consolidated Judgment**), by the Circuit Court of the First Circuit (**circuit court**)[2] in favor of the Kekonas.

In CAAP-16-0000679, Bornemann appeals from the 9/19/16 Consolidated Judgment and also challenges the following orders entered during the most recent remand to the circuit court: an "Order Granting in Part Plaintiffs' Motion to Amend Three Orders to Pay Over, and for Other and Further Relief," filed February 1, 2016; and an "Order Denying [Bornemann]'s Motion to Vacate Judgment Entered on February 5, 2008 or Any Judgment Entered on Remand, and to Dismiss this Case in its Entirety," filed on October 8, 2015. Bornemann asserts the 9/19/16 Consolidated Judgment should be vacated: (1) because a 1994 judgment in the Hanauma Bay lawsuit expired on September 2, 2014, pursuant to

---

[2] The Honorable Rhonda A. Nishimura entered the 9/19/16 Consolidated Judgment.

3

Hawaii Revised Statutes (**HRS**) § 657-5 (1993; Supp. 2001),[3] and thus can no longer support the judgments in the instant case; (2) the Circuit Court erred by canceling deeds and returning the Kāneʻohe property to Abastillas and Smith without affording Bornemann credit for equity; and (3) the circuit court erred by awarding both post-judgment statutory interest and punitive damages against Bornemann where the punitive damages award already reflected punishment for delayed payment to the Kekonas.

In CAAP-16-0000782, Abastillas and Smith appeal from the 9/19/16 Consolidated Judgment and also challenge an "Order Denying Motion of Defendants [Abastillas] and [Smith] to Vacate Judge Marks' Amended Revised Judgment Filed February 26, 2001, and Dismiss This Case in Its Entirety with Prejudice Because Both the Hanauma Bay Judgment and Judge Marks' Judgment in This Case Have Expired (Filed June 24, 2015)" entered on October 8, 2015. Abastillas and Smith contend the circuit court erred: (1) by applying Estate of Roxas v. Marcos, 121 Hawaiʻi 59, 214 P.3d 598 (2009) retroactively to judgments in the Hanauma Bay lawsuit and the instant case; (2) because the 1994 judgment in the Hanauma Bay lawsuit expired pursuant to HRS § 657-5, and thus the fraudulent transfer claim also expired; (3) in determining

---

[3]   HRS § 657-5 (1993) provides:

> **§657-5  Domestic judgments and decrees.**  Unless an extension is granted, every judgment and decree of any court of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was rendered.  No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended.  No extension of a judgment or decree shall be granted unless the extension is sought within ten years of the date the original judgement or decree was rendered.  A court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree.  No extension shall be granted without notice and a hearing.

HRS § 657-5 was amended in 2001 and amended the last sentence to read, "[n]o extension shall be granted without notice and the filing of a non-hearing motion or a hearing motion to extend the life of the judgment or decree."  HRS § 657-5 (Supp. 2001).  This amendment is non-material for the purposes of analyzing the instant case.

4

Abastillas and Smith had unduly delayed and thus denying a motion to vacate certain judgments; and (4) in denying their request to make an oral motion under Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 7(b)(1)[4] at a proceeding on September 29, 2015.

For the reasons discussed below, we vacate the 9/19/16 Judgment only with respect to the canceling and voiding of deeds related to the Kāneʻohe property.  Otherwise, we affirm.

## I.    Background

### A.    Hanauma Bay Lawsuit

The Kekonas met Abastillas and Smith in the late 1980s. Standard Mgmt., 99 Hawaiʻi at 127, 53 P.3d at 266.  Abastillas, Smith, and the Kekonas entered into an agreement wherein the Kekonas would serve as passive investors in a partnership operating a tram at Hanauma Bay.  Id.  In 1989, SMI filed the Hanauma Bay lawsuit against the Kekonas alleging unlawful ouster from the Hanauma Bay partnership.  Id.  The Kekonas counterclaimed against SMI for breach of contract.  Id.  The Kekonas also filed a third-party complaint against Abastillas and Smith, alleging, *inter alia*, that the Kekonas were fraudulently induced into the partnership by Abastillas' and Smith's intentional misrepresentations.  Id.

In May of 1993, a jury rendered a special verdict in favor of the Kekonas on the complaint, the counterclaim, and the third-party complaint.[5]  Id.  The jury awarded the Kekonas: (1) $152,500 against SMI (consisting of special damages, general

---

[4]  HRCP Rule 7(b)(1) provides:

(b) *Motions and other papers.*

(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.  The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

[5]  The Honorable James R. Aiona, Jr. presided.

damages, and attorneys' fees); (2) $200,000 in general damages, $25,000 in punitive damages, and $56,250 in attorneys' fees against Abastillas; and (3) $270,000 in general damages against Smith. Id. On September 2, 1994, a Revised Judgment (**1994 Hanauma Bay Judgment**) was filed, which entered judgment for the Kekonas pursuant to the jury award and also for costs of $8,128.27.

On November 25, 1997, this court (**ICA**) issued a decision affirming the awards of $152,500 in general damages and attorneys' fees against SMI and the $25,000 in punitive damages against Abastillas. Id. at 128, 53 P.3d at 267. However, this court remanded for a new trial on the issue of general damages against Abastillas for fraud and on the negligence claim against Smith. Id.

During remand, the parties engaged in various efforts to settle and then engaged in further litigation. Id. at 128-30, 53 P.3d at 267-69. Subsequently, the circuit court entered a "Final Judgment on Remand as to All Claims and All Parties" (**1999 Hanauma Bay Judgment**).[6] Id. at 130, 53 P.3d at 269. On February 28, 2001, this court affirmed the 1999 Hanauma Bay Judgment and an underlying amended stipulation.[7] Id. at 138, 53 P.3d at 277.

Ultimately, the amount due to the Kekonas based on judgments in the Hanauma Bay lawsuit amounted to $191,628.27. See Kekona I at *1.

B.     **The Instant Lawsuit**

The Kekonas filed this lawsuit on October 13, 1993, about four and a half months after the jury verdict in the Hanauma Bay lawsuit on May 25, 1993, and after the Nuʻuanu and

---

[6] The Honorable Marie N. Milks presided.

[7] The ICA opinion appears to mistakenly refer to the 1999 judgment as "the March 18, 1999 final judgment and its underlying amended stipulation." Standard Mgmt., 99 Hawai'i at 138, 53 P.3d at 277. It appears this reference should refer to the August 17, 1999 final judgment and its underlying amended stipulation.

Kāne'ohe properties had been transferred to Bornemann. Kekona IV, 135 Hawai'i at 258, 349 P.3d at 365.

### 1. First Two Trials and First Round of Appeals

In 1999, the first jury in this lawsuit awarded the Kekonas extensive damages against SMI, Abastillas, Smith and Bornemann on a variety of counts, including $250,000 in punitive damages against each of the defendants. Id. at 259, 349 P.3d at 366. However, the circuit court found that the punitive damages award against Bornemann was excessive and ordered a new trial as to Bornemann unless the Kekonas consented to reduce that award to $75,000. Id. The Kekonas opted for a new trial. Id.

The second jury awarded the Kekonas $594,000 in punitive damages against Bornemann. Id. The circuit court entered an "Amended Final Revised Judgment" on February 26, 2001 (**2001 Judgment**), which awarded the Kekonas specified amounts consistent with the first jury trial, except for the revised amount of $594,000 in punitive damages against Bornemann.[8] Abastillas, Smith, SMI, and Bornemman, among others, appealed from the 2001 Judgment. See Kekona I at *1.

On June 8, 2006, in Kekona I, the ICA issued a memorandum opinion affirming most of the 2001 Judgment. Id. However, the ICA vacated: (1) a $100,000 general damages award against inter alia, Abastillas, Smith, and Bornemann for their conspiracy to fraudulently transfer the Kāne'ohe property and (2) a $100,000 award of general damages against Abastillas, Smith, and Bornemann for their conspiracy to fraudulently transfer the Nu'uanu property. Id. at *28.

Smith and Abastillas filed an application for writ of certiorari, which was rejected by the Hawai'i Supreme Court. Kekona II, 113 Hawaii at 183 n.10, 150 P.3d at 832 n.10. Separately, Bornemann filed an application for writ of

---

[8]    The specific amounts awarded in the 2001 Judgment are detailed in Kekona I at *7 n.5.

certiorari, which was <u>granted</u> by the Hawaiʻi Supreme Court. <u>Id.</u> At 175, 150 P.3d at 824.

Bornemann argued to the supreme court, *inter alia*, that the ICA erred by holding that a fraudulent transfer need only be proved by preponderance of the evidence, rather than by clear and convincing evidence. <u>Kekona II</u>, 113 Hawaiʻi at 180, 150 P.3d at 829. The supreme court agreed with Bornemann and remanded the case to the circuit court **as to Bornemann**, as follows:

> We therefore remand the case to the circuit court for a new trial as to (a) whether the Kekonas can demonstrate that the transfers were fraudulent by "clear and convincing evidence," (b) whether the Kekonas can demonstrate, by "clear and convincing evidence," that Bornemann conspired to fraudulently transfer the Kaneohe and [Nuuanu] properties, and (c) the appropriate remedies to be assessed against Bornemann, if any.

<u>Id.</u> at 183, 150 P.3d at 832. Of further note, the supreme court explained **as to Abastillas and Smith**:

> We reiterate the point that Abastillas and Smith failed to present any meritorious argument in their applications for writs of certiorari. Notably, neither Abastillas nor Smith raised the insufficient standard of proof issue in their applications to this court. It is fundamental that "[q]uestions not presented . . . will be disregarded." Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 40.1(d)(1). We do not perceive the requisite prejudice warranting a plain error analysis. <u>See</u> HRAP Rule 40.1(d)(1) ("The supreme court, at its option, may notice a plain error not presented."). <u>Accordingly, the ICA's opinion and the circuit court's February 26, 2001 "Amended Revised Final Judgment" are affirmed as to them</u>.

<u>Id.</u> at 183 n.10, 150 P.3d at 832 n.10 (emphasis added).

### 2. Third Trial as to Bornemann and Second Round of Appeals

On remand to the circuit court as to Bornemann, a third jury trial was held.[9] In a jury verdict entered on January 3, 2008, the jury found by clear and convincing evidence that the Kāneʻohe property was fraudulently transferred, but not the Nuʻuanu property. The jury awarded the Kekonas $253,000 in

---

[9] The Honorable Victoria S. Marks presided.

8

special damages against Bornemann "to compensate for the interest that had accrued on the Kekonas' initial $191,000 judgment." Kekona IV, 135 Hawai'i at 262, 349 P.3d at 369. The jury also awarded the Kekonas $1,642,857.13 in punitive damages against Bornemann. Id. A "Final Judgment" related to the third jury trial was entered on February 5, 2008 (**2008 Judgment**).

Bornemann appealed the 2008 Judgment to the ICA, asserting among other things that: the special damages award against him of $253,000 constituted double recovery; and the punitive damages award against him of $1,642,857.13 was excessive and unconstitutional. Kekona III, 130 Hawai'i at 63-64, 305 P.3d at 479-80. With regard to the special damages award of $253,000, the ICA expressed concern as to whether that award, in combination with cancellation of the transfer of the Kāne'ohe property, provided a recovery to the Kekonas that exceeded the amount of their damages. Id. at 67-69, 305 P.3d at 483-85. In this regard, the ICA vacated the 2008 Judgment and held that further proceedings were necessary to fashion an appropriate remedy against Bornemann. Id. at 69, 74, 305 P.3d at 485, 490. With regard to the $1,642,857.13 punitive damages award against Bornemann, the ICA held that the award violated Bornemann's due process rights and found instead that punitive damages in the amount $250,000 was sufficient to punish Bornemann. Id. at 74, 305 P.3d at 490.

The Kekonas applied for a writ of certiorari requesting supreme court review **only as to the punitive damages award**, which the supreme court granted. Kekona IV, 135 Hawai'i at 262, 349 P.3d at 369. In Kekona IV, issued on April 24, 2015, the supreme court vacated the ICA judgment with regard to the $1,642,857.13 punitive damages award against Bornemann, and instead held that "the evidence presented to the third jury adequately substantiated the $1,642,857.13 punitive damages award that the jury rendered." Id. at 264, 349 P.3d at 371. In its Amended Judgment on Appeal filed on July 6, 2015, the supreme court thus

vacated the ICA's 2013 judgment on appeal **in part**, affirmed the circuit court's 2008 Judgment with respect to the $1,642,857.13 punitive damages award against Bornemann, and remanded the case to the circuit court for proceedings consistent with its opinion.[10]

### 3. 2015 Remand to Circuit Court

The current appeals arise from proceedings in the circuit court[11] after the supreme court remanded the case in 2015 pursuant to Kekona IV.

In the circuit court, on June 23, 2015, Bornemann filed a Motion to Vacate Judgment arguing that the 2008 Judgment lacked a valid enforceable debt because the 1994 Hanauma Bay Judgment had expired. On June 24, 2015, Abastillas and Smith filed a similar Motion to Vacate the 2001 Judgment, asserting both the 1994 Hanauma Bay Judgment and the 2001 Judgment in this case had expired.

The Kekonas responded to the motions to vacate by arguing the circuit court lacked the authority to overrule the judgments affirmed by either the 2006 ICA decision or the supreme court's decision in 2015. The Kekonas also argued that an amended revised final judgment subsequent to the ICA's 2006 decision in Kekona I had never been filed and therefore, there was no valid original judgment pursuant to Roxas. On September 29, 2015, a hearing was held regarding the motions to vacate.

On October 7, 2015, the Kekonas filed a "Motion to Enter Consolidated Amended Amended Final Revised Judgment Following Remand" (**Motion to Enter Consolidated Judgment**). The

---

[10] On May 4, 2015, Bornemann filed a motion for reconsideration regarding the opinion in Kekona IV, which the supreme court denied. After the supreme court entered its initial judgment on appeal on June 18, 2015, the Kekonas filed a motion for reconsideration, requesting that the supreme court judgment specifically affirm the circuit court's $1,642,857.13 punitive damages award against Bornemann, which the supreme court granted. Thus, an Amended Judgment on Appeal was filed on July 6, 2015.

[11] The Honorable Rhonda A. Nishimura presided.

10

Kekonas sought a consolidated judgment reflecting the 2006 ICA opinion in Kekona I (particularly the itemized awards set forth in footnote 5) and the 2015 supreme court opinion in Kekona IV, and entry of final judgment against all parties for all claims.

On October 8, 2015, the circuit court entered two orders denying the motions to vacate that had been filed by Abastillas and Smith, and Bornemann, respectively.

On October 30, 2015, the Kekonas filed a "Motion to Amend Three Orders/Stipulations, For Order to Pay Over, and for Other and Further Relief" (**Motion to Amend**). The Kekonas sought an order that Bornemann pay over monies in four bank accounts and transfer both the Nu'uanu and Kāne'ohe properties to the Kekonas. The Kekonas also sought the remaining equity in the Kāne'ohe property to be credited such as to satisfy part of the judgment against Abastillas and Smith.

On December 2, 2015, a hearing was held on the Motion to Enter Consolidated Judgment and the Motion to Amend. The Kekonas argued that as part of a supersedeas bond in 2008, Bornemann had deeded the Kāne'ohe property to Smith and Abastillas. Bornemann argued that he was not liable for any judgments against Smith and Abastillas other than the original claim plus statutory interest. Bornemann also argued that the purpose of the supersedeas bond was to pursue his appeal and to stay execution on the judgments entered against him.

On January 11, 2016, a second hearing was held on the Motion to Amend with regards to the Kāne'ohe property. Bornemann argued that he had never waived his equity in the Kāne'ohe property and is entitled to a credit. The Kekonas argued that Bornemann never claimed an interest in the Kāne'ohe property and failed to file a timely motion for clarification of the supersedeas bond or the orders cancelling the quitclaim deeds.

At the hearing, the circuit court noted that the order granting in part Bornemann's motion for stay of execution in 2008

11

had ordered Bornemann to deliver to escrow a deed transferring his interest in the Kāne'ohe property to SMI and Smith and did not mention a credit to Bornemann. The circuit court also noted that the 2013 ICA decision, Kekona III, had not addressed the cancellation of the quitclaim deeds related to the Kāne'ohe property which had been declared null and void by the circuit court in the 2008 Judgment. Furthermore, the order cancelling the quitclaim deeds stated that Bornemann had no right, title, interest, or other benefit as to the Kāne'ohe property.

On February 1, 2016, the circuit court entered orders that: granted the Motion to Enter Consolidated Judgment; and granted in part the Motion to Amend. The same day, the circuit court also entered a "Consolidated Amended Amended Revised Final Judgment" (2/1/16 Judgment)

On February 11, 2016, Bornemann filed a Motion for Reconsideration arguing that the circuit court failed to follow the plain text of HRS § 651C-8 and that he is entitled to a credit for the equity in the Kāne'ohe property. Bornemann's Motion for Reconsideration was orally denied on April 7, 2016.

Smith and Abastillas filed a notice of appeal and Bornemann filed a separate notice of appeal from the 2/1/16 Judgment. On June 27, 2016, the ICA entered two orders dismissing the appeals for lack of appellate jurisdiction because the 2/1/16 Judgment failed to identify the claims on which the circuit court intended to enter judgment.

On September 19, 2016, the circuit court entered the 9/19/16 Judgment. Therein, the circuit court specified the claims on which judgment was entered against the respective defendants and the amounts awarded for each claim.

• As to Smith, judgment was entered in the total amount of $1,656,000 (the award of $662,400 plus $993,600 in

12

interest since the 2001 Judgment), plus statutory interest from February 26, 2016.[12]

• As to Abastillas, judgment was entered in the total amount of $2,435,004 (the award of $974,004 plus interest of $1,461,000 since the 2001 Judgment), plus statutory interest from February 26, 2016.

• As to Bornemann, judgment was entered in the total amount of $2,957,142.73 (punitive damages of $1,642,857.13 plus $1,314,285.60 in interest since the 2008 Judgment), plus statutory interest from February 5, 2016.

Similar to the 2008 Judgment, the 9/19/16 Judgment declared four specified deeds regarding the Kāneʻohe property cancelled and void.

Bornemann appealed resulting in CAAP-16-0000679. Abastillas and Smith appealed resulting in CAAP-16-0000782.

## II. Standard of Review

### A. Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo." State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009) (internal quotation marks omitted). Our construction of statutes is guided by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

---

[12]   The amounts in the 9/19/16 Judgment against Smith and Abastillas track the amounts awarded in the 2001 Judgment, except for $200,000 in general damages that were vacated by the ICA in Kekona I.  Also, because Smith's law firm and SMI had dissolved, the 9/19/16 Judgment included the awards against those entities as against Smith as Trustee for his law firm and against Abastillas as Trustee for SMI.

Id. (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & Cty. of Honolulu, 114 Hawai'i 184, 193-94, 159 P.3d 143, 152-53 (2007)).

### B. Motion to Vacate Judgments

The circuit court's rulings on the motions to vacate prior judgments were based on determining the legal effect of certain prior judgments and whether they had expired pursuant to HRS § 657-5. These were questions of law, which we review de novo. See generally Estate of Roxas, 121 Hawai'i at 66, 214 P.3d at 605; Bank of Hawaii v. DeYoung, 92 Hawai'i 347, 351, 992 P.2d 42, 46 (2000).

## III. Discussion

### A. Bornemann's Appeal in CAAP-16-0000679

#### 1. Expiration of the 1994 Hanauma Bay Judgment

Bornemann contends that the circuit court erred in denying his motion to vacate, which sought to vacate the 2008 Judgment against him, because the 1994 Hanauma Bay Judgment which he asserts set forth the underlying debt owed to the Kekonas expired on September 2, 2014, pursuant to HRS § 657-5. Bornemann notes that the 1994 Hanauma Bay Judgment was extended by the Kekonas under HRS § 657-5 for ten years, and thus expired on September 2, 2014. Hence, Bornemann contends that by the time the circuit court was again addressing this case after remand from the supreme court in 2015, there was no underlying debt owned to the Kekonas and a necessary component of the fraudulent transfer claim had expired.

Bornemann argues the 2008 Judgment should have been vacated pursuant to HRCP Rule 60(b)(5), which provides for relief when a judgment "has been satisfied, released, or discharged[.]" He then points to HRS § 657-5, the pertinent version of which provides:

> §657-5 Domestic judgments and decrees. Unless an extension is granted, every judgment and decree of any court of the State shall be presumed to be paid and discharged at the expiration of ten years after the judgment or decree was

14

rendered. No action shall be commenced after the expiration of ten years from the date a judgment or decree was rendered or extended. No extension of a judgment or decree shall be granted unless the extension is sought within ten years of the date the original judgement or decree was rendered. A court shall not extend any judgment or decree beyond twenty years from the date of the original judgment or decree. No extension shall be granted without notice and a hearing.

(Emphasis added).

Borneman further argues that under Int'l Sav. and Loan Ass'n, Ltd. v. Wiig, 82 Hawai'i 197, 921 P.2d 117 (1996), involving a garnishment proceedings, if an underlying judgment expires under HRS § 657-5, the judgment is presumed paid and discharged, and all rights and remedies appurtenant to that judgment terminate. Bornemann asserts that a fraudulent transfer claim, like garnishment, is only a mechanism to collect an existing debt and requires a presently enforceable underlying claim. See Carr v. Guerard, 616 S.E.2d 429 (S.C. 2005); Jahner v. Jacob, 515 N.W.2d 183 (N.D. 1994); Oregon Recovery, LLC v. Lake Forest Equities, Inc., 211 P.3d 937 (Or. Ct. App. 2009); RRR, Inc. v. Toggas, 98 F.Supp.3d 12 (D. D.C. 2015).

First, we note that the Kekonas initiated this action after the 1993 jury award in the Hanauma Bay lawsuit and before any judgment had been entered in that prior lawsuit. The Kekonas' Verified Complaint relies on the assertion that they had been awarded damages by the jury in the Hanauma Bay lawsuit and that soon thereafter, defendants sought to conceal assets by transferring property to prevent the Kekonas from recovering on the jury award. Hence, contrary to Bornemann's assertion, the Kekonas do not only rely on the 1994 Hanauma Bay Judgment as the underlying basis for their fraudulent transfer claim in this case.

Second, even assuming this action by the Kekonas is construed as based on the 1994 Hanauma Bay Judgment, we conclude that Wiig is distinguishable. Unlike in this case, there was no separate and independent judgment in Wiig distinct from the

underlying judgment that supported the garnishment order. There, the plaintiff bank had obtained a judgment for a specified amount against Wiig, and then filed a motion for issuance of a garnishee summons to enforce the judgment. 82 Hawai'i at 198, 921 P.2d at 118. The circuit court entered a garnishee order directing Wiig's employer to withhold part of his salary and pay it to plaintiff bank until the underlying judgment was fully paid. Id. During the course of repayment, Wiig asserted that the underlying judgment had expired and thus the garnishee order should be set aside. Id. The circuit court denied Wiig's motion, but on appeal, the Hawai'i Supreme Court reversed. Id. at 198-99, 202, 921 P.2d at 118-19, 122. The supreme court held that, under HRS § 657-5, the underlying judgment was presumed paid and discharged, that the existence of a valid judgment is a jurisdictional prerequisite to garnishment relief, and that the garnishment order could not survive independently of the judgment as the primary purpose of a garnishment is to enforce the payment of a judgment. Id. at 201-02, 921 P.2d at 121-22.

To the contrary, as noted in the extensive history of this case which began in 1993, there were two judgments entered against Bornemann in this case before the 1994 Hanauma Bay Judgment allegedly expired in 2014 -- the 2001 Judgment and the 2008 Judgment. Thus, long before the alleged expiration of the 1994 Hanauma Bay Judgment, independent and separate judgments were entered in this case against Bornemann.

Third, and for similar reasons, we conclude that the case law from other jurisdictions related to fraudulent transfer claims is distinguishable. In those cases, although fraudulent transfer lawsuits were dismissed once an underlying judgment had expired, it does not appear that independent judgments in the fraudulent transfer cases had been obtained by the time those cases were dismissed. See Carr, 616 S.E.2d at 430 (plaintiff filed his fraudulent transfer action after the underlying judgment had already expired); Oregon Recovery, LLC, 211 P.3d at

16

939.  In short, the underlying judgments in Carr and Oregon Recovery, LLC expired before **any** judgment for the fraudulent transfer lawsuit could be rendered.

Here, by contrast, the Kekonas filed this lawsuit against Bornemann in 1993, soon after the jury award in the Hanauma Bay lawsuit and before the 1994 Hanauma Bay Judgment had even been issued.  Further, the 2001 Judgment and 2008 Judgment against Bornemann were both rendered in this case before the 1994 Hanauma Bay Judgment purportedly expired.

Finally, we note that Bornemann contends the 1994 Hanauma Bay Judgment expired on September 2, 2014.  At that time, this case was pending in the Hawai'i Supreme Court.  The supreme court issued Kekona IV on April 24, 2015, after Bornemann contends the underlying judgment expired.  At no time did Bornemann (or any other party) assert in the supreme court that any judgment in this case against him should be vacated due to the expiration of the 1994 Hanauma Bay Judgment.  Even after Kekona IV was issued, Bornemann filed a motion seeking reconsideration by the supreme court of its opinion.  Bornemann's motion for reconsideration did not mention anything about the 1994 Hanauma Bay Judgment expiring such that any award or judgment against him was precluded in this case.  The supreme court's mandate, subsequently issued in its July 6, 2015 Amended Judgment on Appeal, affirms the $1,642,857.13 punitive damages award against Bornemann.  On remand, the circuit court was obligated "to comply strictly with the mandate of the appellate court according to its true intent and meaning[.]"  Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawai'i, 106 Hawai'i 416, 439, 106 P.3d 339, 362 (2005).

Given the circumstances in this case, the circuit court did not err in denying Bornemann's motion to vacate the 2008 Judgment.

### 2. Credit to Bornemann for Equity in Kāne'ohe Property

Bornemann contends the circuit court erred in entering the 9/19/16 Consolidated Judgment because it canceled the deeds to the Kāne'ohe property without considering the value of that property or the value of the 1994 Hanauma Bay Judgment, and without affording Bornemann any credit for equity in the Kāne'ohe property which he estimates was $315,400.[13] Bornemann thus asserts the 9/19/16 Judgment should be modified to give him a credit for the $315,400 purported equity in the Kāne'ohe property.[14]

After remand in 2015, in seeking to fashion a remedy for the Kekonas against Bornemann for the fraudulent transfer of the Kāne'ohe property, it appears the circuit court did not factor in the value of the Kāne'ohe property and whether voiding the deeds which transferred the property to Bornemann allowed the Kekonas to exceed the recovery due to them under HRS §§ 651C-7 and 651C-8. This is inconsistent with Kekona III, 130 Hawai'i at 66-69, 305 P.3d at 482-85.

The 2008 Judgment included an award for the Kekonas against Bornemann in the amount of $253,075.29 for delay damages, punitive damages in the amount of $1,642,857.13, and a declaration canceling and voiding deeds related to the Kāne'ohe property. On appeal to the ICA, in Kekona III, the ICA vacated the 2008 Judgment, including the award of $253,075.29 against

---

[13] Bornemann arrives at this figure by arguing that in 2015, the Kane'ohe property was tax assessed to have a value of $912,400. Bornemann then calculates the 1994 Hanauma Bay Judgment, which was $191,628.27, with ten percent statutory interest added as of February 1, 2016 as amounting to $597,000. He then subtracts $597,000 from $912,400, resulting in his claim of a $315,400 equity credit.

[14] The Kekonas argue that Bornemann waived this argument by failing to raise it in the circuit court. We disagree. During the most recent remand to circuit court, Bornemann opposed the Kekonas' Motion to Enter Consolidated Judgment and the Motion to Amend, and argued the circuit court should give him credit for the equity in the Kāne'ohe property.

Bornemann for delay damages **and** the voiding of the deeds. The Kekonas only sought a writ of certiorari from the supreme court with respect to the punitive damages award, and thus the rest of the ICA opinion and judgment in Kekona III remained in effect.

In Kekona III, this court addressed Bornemann's various arguments that damages awarded against him and voiding the transfer of the Kāne'ohe property, set forth in the 2008 Judgment, had improperly allowed the Kekonas to obtain an excessive recovery. Id. We analyzed the statutory remedies under HRS Chapter 651C and agreed with Bornemann. Of note, after discussing the types of remedies allowed under HRS § 651C-7, which are subject to the limitations in HRS § 651C-8, this court stated "this statutory scheme provides the Kekonas with any number of ways to recover what is due to them, but it does not allow them to be compensated more than once." Id. at 68, 305 P.3d at 484. We thus held that:

> although the Kekonas are entitled to relief against Bornemann for the amount of the original underlying judgment against Smith and Abastillas plus the statutory interest awarded by the jury as damages, further proceedings are necessary to fashion an appropriate form or forms of remedy, executed in a manner that their recovery does not exceed the sums due to them.

Id. at 69, 305 P.3d at 485 (emphasis added).

HRS § 651C-7 (2016) details the statutory remedies of creditors for fraudulent transfers and provides:

> **[§651C-7] Remedies of creditors.** (a) In any action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations provided in section 651C-8, may obtain:
>
>   (1)  Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
>   (2)  An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 651;
>
>   (3)  Subject to applicable principles of equity and in accordance with applicable civil rules of procedure:

      (A)     An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

      (B)     Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

      (C)     Any other relief the circumstances may require.

     (b)  If a creditor has obtained a judgment on a claim against the debtor, the creditor may, if the court so orders, levy execution on the asset transferred or its proceeds.

(Emphasis added). The relevant limitations of HRS § 651C-8 are as follows:

[§651C-8] **Defenses, liability, and protection of transferee.** (a) A transfer or obligation is not voidable under section 651C-4(a)(1) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under section 651C-7(a)(1), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

      (1)     The first transferee of the asset or the person for whose benefit the transfer was made; or

      (2)     Any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee.

(c) If the judgment under subsection (b) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

Given these provisions, we agree with Bornemann to the limited extent that the circuit court should have determined the amount necessary to satisfy the claim, *i.e.* the $191,628.27 in damages stemming from the Hanauma Bay lawsuit, plus statutory interest; and once that amount was determined, the circuit court should have, with regard to Bornemann,[15] "fashion[ed] an

_____

[15] We note that <u>Kekona III</u> only addressed Bornemann's appeal from the 2008 Judgment.

appropriate form or forms of remedy, executed in a manner that [the Kekonas'] recovery does not exceed the sums due to them." 130 Hawai'i at 69, 305 P.3d at 485. It does not appear the circuit court considered how voiding the transfer of the Kāne'ohe property to Bornemann affected the amount recovered by the Kekonas, and whether voiding the transfer of the Kāne'ohe property to Bornemann allowed the Kekonas to recover an amount exceeding the sums due to them for damages and interest stemming from the Hanauma Bay lawsuit. Thus, we conclude a further remand is necessary on this issue.

On remand, the circuit court should: determine the current circumstances of the case (i.e., if the Kekonas have already recovered any of the damages or interest stemming from the Hanauma Bay lawsuit); determine whether or to what extent voiding the transfer of the Kāne'ohe property to Bornemann is needed for the Kekonas to recover the sums due to them for damages and interest stemming from the Hanauma Bay lawsuit; and fashion a remedy against Bornemann[16] to ensure the Kekonas' recovery in this regard does not exceed the sums due to them. If the transfer of the Kāne'ohe property to Bornemann is voided, the circuit court should assess how that impacts the amounts recovered by the Kekonas and provide a remedy against Bornemann such that the Kekonas receive only the amount due to them for the damages and interest stemming from the Hanauma Bay lawsuit.

### 3. Punitive Damages and Post-Judgment Interest

Bornemann continues to challenge the punitive damages that have been awarded against him in the amount of $1,642,857.13. Regardless of Bornemann's various arguments in this regard, we need not revisit this issue. In short, the punitive damages award against Bornemann was finally decided by the supreme court in Kekona IV. 135 Hawai'i at 264-67, 349 P.3d at 371-74.

---

[16] Abastillas and Smith do not challenge the amounts entered against them in the 9/19/16 Consolidated Judgment.

21

As to Bornemann's arguments regarding post-judgment interest, "[t]he purpose of [post-judgment] interest is to compensate the successful plaintiff for being deprived of compensation for the loss of time between the ascertainment of the damage and the payment by the defendant." U.S. v. Bell, 602 F.3d 1074, 1083 (9th Cir. 2010) (internal quotation marks and citation omitted). "Under the common law there is no [post-judgment] interest, so the propriety of an award of [post-judgment] interest rests solely upon the statutory provision." Id. (internal quotation marks and citation omitted).

Under Hawai'i law, post-judgment interest is governed by HRS § 478-3 (2008) which states: "[i]nterest at the rate of ten per cent a year, and no more, shall be allowed on any judgment recovered before any court in the State, in any civil suit."

It is apparent from various points in the record that Bornemann was aware that post-judgment interest was continuing to accrue through the various trials and appeals. Prior to the third jury trial, Bornemann, Abastillas, Smith, and the Kekonas agreed to Jury Instruction No. 27 which provided: "[i]nterest at the rate of ten percent a year, and no more, shall be allowed on any court judgment. H.R.S. Section 478-3."

In its Amended Judgment on Appeal following Kekona IV, the supreme court expressly affirmed the punitive damages award of $1,642,857.13 against Bornemann, which had been included in the 2008 Judgment. Given all of the circumstances in this case, we find no error in the circuit court thereafter awarding statutory interest on the punitive damages award, amounting to $1,314,285.60 in interest since the 2008 Judgment.

## B. Abastillas and Smith's Appeal in CAAP-16-0000782

### 1. Retroactivity of Roxas

Abastillas and Smith argue that the supreme court's decision in Estate of Roxas v. Marcos, 121 Hawai'i 59, 214 P.3d 598 (2009), should not be applied retroactively to determine when

22

certain judgments, in the Hanauma Bay lawsuit and this case, expired pursuant to HRS § 657-5. Abastillas and Smith argue that: the 1994 Hanauma Bay Judgment expired on September 1, 2014, after being extended an additional ten years under HRS § 657-5; the 1999 Judgment in the Hanauma Bay lawsuit expired on August 17, 2009; and the 2001 Judgment in this case expired on February 26, 2011, even though it was appealed and this court in Kekona I affirmed it in part and vacated it in part.

Abastillas and Smith contend that because this court's decision in Estate of Roxas v. Marcos, 120 Hawai'i 123, 202 P.3d 584 (App. 2009) was later vacated by the supreme court, the supreme court's Roxas opinion therefore "established a new principle of law[.]" We disagree.

The supreme court's holding in Roxas did not change established law, but instead provided an opportunity for the Hawai'i appellate courts to interpret the term "original judgment" as set forth in HRS § 657-5. Roxas, 121 Hawai'i at 66-71, 214 P.3d at 606-10. The Roxas decision does not reflect that it should be applied only prospectively. See, contra State v. Auld, 136 Hawai'i 244, 361 P.3d 471 (2015) (recognizing that the court was announcing new rules in that case that should be applied prospectively). Indeed, the decision in Roxas was applicable to judgments in that case issued long before the supreme court's opinion, including a judgment issued in 1999. 121 Hawai'i at 74, 214 P.3d at 613. Thus, we disagree with Abastillas and Smith that the Roxas decision must be applied only prospectively.

As held in Roxas, the term "original judgment" in HRS § 657-5 "pertains to the judgment that creates the rights and responsibilities that the moving party is seeking to enforce and extend." Id. at 71, 214 P.3d at 610. Moreover, the supreme court addressed the effect of an amended judgment for purposes of HRS § 657-5, and held that:

where multiple judgments created the same rights that the party is seeking to extend, the "original judgment" is (1) the unamended judgment where the amended judgment makes non-material amendments to a prior judgment, but (2) the amended judgment where it amended the prior judgment "in a material and substantial respect."

Id. at 72-73, 214 P.3d at 611-12.

In this case, as noted earlier, there were independent and separate judgments entered in this case before the judgements in the Hanauma Bay lawsuit allegedly expired. Thus, as we concluded earlier, the alleged expiration of the judgments in the Hanauma Bay lawsuit are not dispositive. Further, as to the argument by Abastillas and Smith that the 2001 Judgment in this case expired, we note that the 2001 Judgment was amended in a material and substantial manner by the 2008 Judgment. Moreover, the 2008 Judgment was thereafter amended in a material and substantial manner by the 9/19/16 Consolidated Judgment in this case. In sum, we reject Abastillas and Smith's arguments that judgments against them have expired such that all damages awarded against them in this case are extinguished.

### 2.    Abastillas and Smith's Other Arguments

Abasillas and Smith further argue that they did not unduly delay in filing their HRCP Rule 60(b)(5) motion to vacate certain judgments against them, and alternatively, that the circuit court erred in not allowing them to substitute HRCP Rule 7(b)(1) for Rule 60(b)(5) to assert that the judgments against them had expired.

Based on the record and our rulings above, it is of no consequence whether Abastillas and Smith were allowed to rely on Rule 60(b)(5) or HRCP Rule 7(b)(1), or if the circuit court considered the merits of their claim that the judgments against them had lapsed. As discussed above, notwithstanding that judgments in the Hanauma Bay lawsuit allegedly have expired, there were separate judgments entered in this case. Moreover, the judgments entered thus far in this case have been materially

24

and substantively amended throughout the course of this lengthy litigation.

## IV. Conclusion

Based on the foregoing, the "Consolidated Third Amended Revised Final Judgment" entered on September 19, 2016, in the Circuit Court of the First Circuit, is vacated only as to its declaration canceling and voiding deeds related to the Kāneʻohe property and declaring that Bornemann shall have no right, title, interest or other benefit under those deeds. The case is remanded to the circuit court for further proceedings consistent with this Memorandum Opinion.

In all other respects, the "Consolidated Third Amended Revised Final Judgment" is affirmed.

DATED: Honolulu, Hawaiʻi, November 30, 2018.

On the briefs:

Terence J. O'Toole,
(Lane Hornfeck and
Michael F. O'Connor
 with him on the briefs),
for Michael Bornemann, M.D.

Fred Paul Benco,
for Benjamin Paul Kekona
and Tamae M. Kekona.

Paz Feng Abastillas,
pro se.

Robert A. Smith,
pro se.

Chief Judge

Associate Judge

Associate Judge

25